UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lajuan Hardy, | Civ. No. 18-794 (DSD/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Bureau of Prisons; Federal Medical Center; G. Cooper, Acting Warden; G. Cooper, Associate Warden of Programs; Sara M. Revell, Regional Director; Ian Connors, Central Administrator; T. Miller, Captain; Bengston, Acting Lieutenant, et al.; Alcoser, Supervisory Chaplain, | |
| Defendants | |

Lajuan Hardy, #41258-074, Federal Correctional Institution, Butner, NC, *pro se* Plaintiff.

Gregory G. Brooker, Esq., Assistant United States Attorney, counsel for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

*Pro se* Plaintiff Lajuan Hardy alleges that his First Amendment free-exercise rights were violated when the Federal Bureau of Prisons ("BOP") did not accommodate a prayer on an Islamic holiday at the Federal Medical Center in Rochester ("FMC Rochester"). (Doc. No. 30, Second Am. Compl.) Defendants—the BOP and several BOP officials—move to dismiss. (Doc. No. 38.) For the reasons stated below, this Court recommends that Defendants' motion be granted.

## I. Background

At all times relevant to this lawsuit, Plaintiff was an inmate at FMC Rochester. Plaintiff sues the following Defendants: (1) the BOP; (2) Acting Warden Gregory Cooper; (3) Regional Director Sara Revell; (4) National Inmate Appeals Administrator Ian Connors; (4) Captain Todd Miller; (5) Acting Lieutenant Christopher Bengtson; and (6) Supervisory Chaplain Ricardo Alcoser. (Second Am. Compl.) Plaintiff seeks five million dollars in compensatory and punitive damages. (*See id.*)[1]

Plaintiff alleges that the Defendants prevented him from participating in the Eid al-Fitr prayer, which occurs at the end of Ramadan. (Second Am. Compl. 2.) He claims that he and other Muslim inmates had been placed on "callout" to the chapel to pray the Eid al-Fitr prayer, but the Chaplain department exhibited "gross negligence" in failing to ensure a staff member was available to supervise the Muslim observance of the prayer. (*Id.*) According to Plaintiff, he and other inmates were ordered to return to their units, told that the Chaplain would be contacted, and told that they would be brought back to the Chapel another time, which did not happen. (*Id.*)

## II. Analysis

Plaintiff alleges claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 368 (1971), the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Religious Freedom Restoration Act ("RFRA"), and the Federal Tort Claims Act ("FTCA"). (*See* Second Am. Compl.) Defendants move to dismiss under Rules 12(b)(1)

---

[1]     Plaintiff does not request injunctive relief.

2

(subject-matter jurisdiction) and 12(b)(6) (failure to state a claim) of the Federal Rules of Civil Procedure.²

### A.     Rule 12(b)(1)

Defendants moving to dismiss under Rule 12(b)(1) may assert either a facial attack on a federal court's subject-matter jurisdiction, which looks only to the face of the pleadings, or a factual attack, which considers matters outside the pleadings. *Croyle by and through Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018). In a facial attack, the 12(b)(1) movant "asserts that the challenged pleading fails to allege sufficient facts to support subject matter jurisdiction." *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018). The Court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.*³

### B.     Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

²     Defendants moved to dismiss on February 15, 2019, and on March 4, 2019, Plaintiff filed a motion seeking permission to appeal the proposed order submitted by Defendants. (Doc. No. 45.) The Court denied this motion and set a March 22, 2018 deadline for Plaintiff to respond to the motion to dismiss. (Doc. No. 46.) Plaintiff's response was filed on March 29, 2019. (Doc. No. 48.)

³     Defendants submitted evidence outside the pleadings (Doc. No. 40), but this Court did not consider this evidence in addressing Defendants' motion. Therefore, this Court approached Defendants' motion as a facial attack, not a factual attack. *See Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (stating that in a factual attack, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case").

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Under this pleading standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555. Thus, the Court in examining a motion to dismiss must determine whether the plaintiff raises a plausible claim of entitlement to relief after assuming all factual allegations in the complaint to be true. *Id.* at 558.

### C.   *Bivens*

Plaintiff alleges claims against the individual BOP officials in this action under *Bivens v. Six Unknown Fed. Agents*, 403 U.S. 388 (1971), which implied a private right of action for allegations of constitutional violations made against federal employees. In *Bivens*, the Supreme Court created an implied cause of action based on a Fourth Amendment violation. *Bivens*, 403 U.S. at 397. The Court subsequently found the *Bivens* remedy available for violations of an individual's rights under the equal protection component of the Fifth Amendment Due Process Clause and for deliberate indifference to a serious medical condition under the Eighth Amendment. *See Davis v. Passman*, 442 U.S. 228, 230 (1979); *Carlson v. Green*, 446 U.S. 14, 17–19 (1980). "These three cases––*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).

In *Ziglar*, the Court was faced with claims from detainees held on immigration violations after the September 11, 2001 terrorist attacks. Plaintiffs' suit challenged the

4

official policies resulting in their detention and the conditions of confinement they endured while detained. *Id.* at 1852–53. The Court concluded that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857. It held that federal courts should exercise caution before extending the remedy to claims that are meaningfully different than "the three *Bivens* claims the Court has approved in the past: a claim against FBI agents for handcuffing a man in his own home without a warrant [*Bivens*]; a claim against a Congressman for firing his female secretary [*Davis*]; and a claim against prison officials for failure to treat an inmate's asthma [*Carlson*]." *Id.* at 1860.

The recognition of a cause of action is context-specific, and the Court has established a rigorous inquiry that courts must use before implying a *Bivens* cause of action in a new context. *See Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). First, courts must ascertain whether a plaintiff's claims arise in a new *Bivens* context. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Ziglar*, 137 S. Ct. at 1859. The Court held:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential factors that previous *Bivens* cases did not consider.

*Id.* at 1860. If the context is new, then the court must ask whether "any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*,

5

551 U.S. at 550. Finally, courts must also analyze "any special factors counseling hesitation before authorizing a new kind of federal litigation," otherwise known as the "special factors analysis." *Id.* "The Court's precedents now make clear that a *Bivens* remedy will not be available if there are special factors counseling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. at 1857. The Supreme Court has not defined the phrase "special factors counseling hesitation," but the Court has observed that the "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58. Put more simply, to be a "'special factor counseling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1858; *see Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 58–59 (E.D.N.Y. 2017).[4]

### 1. Plaintiff's Claims Arise in a New Context

The Supreme Court has never recognized a *Bivens* remedy for First Amendment claims, and it has affirmatively declined to extend *Bivens* to a claim invoking the First Amendment. *See Wood v. Moss*, 572 U.S. 744, 757 (2014) (acknowledging that the Supreme Court has never recognized an implied damages remedy under the First Amendment); *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) (noting that the

---

[4] Applying these factors in *Ziglar*, the Court held that the detention policy claims were not properly brought under *Bivens* because "a *Bivens* action is not a proper vehicle for altering an entity's policy," but the Court remanded the abuse claim for the lower court to consider whether it was appropriate to extend *Bivens* in light of the identified "special factors." *Ziglar*, 137 S. Ct. at 1860, 1869.

6

Supreme Court has "never held that *Bivens* extends to First Amendment claims"); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (declining to extend *Bivens* to a claim sounding in the First Amendment); *see also Gonzalez v. Bendt*, No. 4:16-CV-4038-KES, 2018 WL 1524752, at *3 (D.S.D. Mar. 28, 2018) ("Because the Supreme Court has never implied a *Bivens* cause of action for First Amendment retaliation, Gonzalez's claim involves a different constitutional right and is meaningfully different from previous *Bivens* cases."). Therefore, Plaintiff's claims arise in a new *Bivens* context.

### 2. Alternative, Existing Processes are Available to Address Plaintiff's Concerns

Prisoners whose First Amendment interests are harmed in federal prison can seek relief under the BOP Administrative Remedy Program. *See* 28 C.F.R. §§ 542.10–542.19. The availability of such remedies is a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (declining to recognize a cause of action under *Bivens* where the prisoner had "full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program"). Thus, there are alternative, existing processes to address Plaintiff's concerns.

### 3. Special Factors Counsel Against Creating a New Cause of Action

When it enacted the Prison Litigation Reform Act ("PLRA"), Congress sought to reduce the number of frivolous prisoner lawsuits. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Beyond doubt, Congress enacted [42 U.S.C.] § 1997e(a) to reduce the quantity

and improve the quality of prisoner suits."). To achieve that end, Congress required prisoners to pay all filing fees for new civil actions and appeals in installments, required total exhaustion of administrative remedies, allowed for *sua sponte* dismissal of meritless claims, and barred recovery of damages for mental or emotional injury without a showing of physical injury or commission of a sexual act. *See* 28 U.S.C. § 1915(b); 42 U.S.C. § 1997e(a), (c), (e). The PLRA's restrictive provisions with respect to prisoner litigation are a special factor counseling hesitation when deciding whether to create a new cause of action for prisoners.

Plaintiff's First Amendment claim also implicates BOP policies regarding security measures, access to programming, and staffing resources. BOP officials faced with the expanded possibility of personal liability may act differently with respect to these issues when dealing with inmates in BOP custody. As explained in *Ziglar*, courts should consider defense costs created by claims against federal officials, Congress' "substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government," and "the time and administrative costs attendant upon intrusions resulting from the discovery and trial process." 137 S. Ct. at 1856. These are additional special factors that counsel against creating a new cause of action under *Bivens*. *See Gonzalez*, 2018 WL 1524752, at *4 (finding that there are "special factors counseling hesitation" to create a *Bivens* remedy because the "cost, time, and energy associated with defending a *Bivens* action brought by an inmate for an action based on retaliation under the First Amendment against a federal employee are significant").

8

Therefore, the special factor analysis establishes that the Court should not recognize a new remedy in this context, and Plaintiff's *Bivens* claim should be dismissed.

### D.   RLUIPA

"RLUIPA was enacted in 2000 to resurrect the language of [RFRA], after the Supreme Court determined, in *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997), that RFRA was unconstitutional as applied to State and local governments." *Moore v. Cross*, No. 05-2875 (JMR/RLE), 2007 WL 835417, at *11 (D. Minn. Mar. 15, 2007) (citing *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 987 (8th Cir. 2004)). RLUIPA "deals exclusively with state, rather than federal prisons," *Lovelace v. Lee*, 472 F.3d 174, 217 (4th Cir. 2006) (Wilkinson, J., concurring in part and dissenting in part), and as a result, "does not create a cause of action against the federal government or its correctional facilities," *Ish Yerushalayim v. United States*, 374 F.3d 89, 92 (2d Cir. 2004). Therefore, Plaintiff's claims under RLUIPA should be dismissed.

### E.   RFRA

Plaintiff also attempts to bring a claim under the Religious Freedom Restoration Act ("RFRA"). RFRA was enacted in 1993 in response to the Supreme Court's decision in *Emp't Div. of Ore. v. Smith*, 494 U.S. 872 (1990). The "purpose of RFRA was to return to what Congress believed was the pre-*Smith* status quo of requiring the Government to show a compelling interest for any law that substantially burdened the free exercise of religion." *Harrell v. Donahue*, 638 F.3d 975, 984 (8th Cir. 2011). Courts of Appeals have unanimously held that RFRA's provision for "appropriate relief" does not include damages against the federal government. *See Davila v. Gladden*, 777 F.3d 1198, 1210

9

(11th Cir. 2015) ("RFRA does not therefore authorize suits for money damages against officers in their official capacities."); *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 840–41 (9th Cir. 2012) (holding that the provision for "appropriate relief" in RFRA does "not authorize suits for money damages"); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) ("RFRA does not waive the federal government's sovereign immunity for damages."). Courts of Appeals have also held, however, that individual defendants may be liable for damages under RFRA in their personal capacities. *See Tanvir v. Tanzin*, 894 F.3d 449, 466 (2d Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 302 (3d Cir. 2016). The Supreme Court and Eighth Circuit have not addressed this issue, and district courts addressing the issue are split. *See Cooper v. True*, Case No. 0:16-cv-02900-MJD-KMM, 2017 WL 6375609, at *6 (D. Minn. Nov. 2, 2017) (collecting cases). It is not necessary to rule on this issue because Plaintiff failed to state a claim for relief under RFRA.

First, Plaintiff failed to plead the personal involvement of each Defendant. *See Patel v. Bureau of Prisons*, 125 F. Supp. 3d 44, 55–56 (D.D.C. 2015) ("The Court concludes that pure vicarious liability—that is, liability of supervisors based solely on the acts of their subordinates—is not sufficient to state a claim under RFRA" because "Congress legislated in relevant respects against the more relevant background of constitutional litigation under *Bivens* and § 1983" and "RFRA does not by its terms authorize a further step away from the background of § 1983 and *Bivens* precedents to impose vicarious liability").

Second, Plaintiff does not allege that Defendants intentionally prevented him from conducting the Islamic prayer. To the contrary, Plaintiff alleges that Defendants were "grossly negligent," and describes the failure to bring him back to the Chapel as an oversight. (*See* Second Am. Compl. 2.) It is unclear whether negligence is enough to state a RFRA claim. *Compare Mack*, 839 F.3d at 305 (noting that under "RFRA, burdens on religious exercise need not be intentional, only substantial");[5] *Lovelace*, 472 F.3d at 194 (holding that under RLUIPA, which has identical statutory language as set forth in RFRA, "simple negligence, the 'lowest common denominator of customary tort liability,' does not suffice to meet the fault requirement" because "[a]doption of the negligence standard would open prison officials to unprecedented liability for burdening an inmate's religious exercise") (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848–49 (1998)); *see also Jones v. Bailey*, No. 16-CV-469, 2018 WL 1513297, at *6 (W.D. Va. Mar. 27, 2018) ("Under either the First Amendment or RLUIPA, the inmate must also demonstrate that the substantial burden was a product of a defendant's conscious or intentional interference with religious rights."). Given this tension in the case law, lack of clarity, a prisoner's right under RFRA not to be denied an annual prayer on one occasion due to staff negligence is not clearly established. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("A Government official's conduct violates clearly established law when, at

---

[5] This language appears to be *dicta* because it was made in the context of the court's conclusion that RFRA represents an alternative remedial scheme to a newly-recognized *Bivens* remedy. *Mack*, 839 F.3d at 305.

11

the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Defendants are therefore entitled to qualified immunity.[6]

For these reasons, Plaintiff's RFRA claims should be dismissed.

### F.     FTCA

Finally, Plaintiff attempts to bring a claim under the FTCA, which "waived the sovereign immunity of the United States for certain torts committed by federal employees." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Plaintiff's claim, however, is a constitutional tort claim, and the United States has not waived its sovereign immunity for such claims. *Id.* at 478 (stating that the "United States simply has not rendered itself liable under [28 U.S.C. §] 1346(b) for constitutional tort claims"); *see also Cox v. United States*, Case No. 17-cv-4773 (SRN/SER), 2018 WL 3581719, at *2 (D. Minn. June 28, 2018) (finding that "the Court lacks subject-matter jurisdiction over Cox's FTCA claim because he presented it as a violation of his constitutional rights, a claim for which the United States has not waived its sovereign immunity"). Therefore, the FTCA does not

---

[6]     Qualified immunity applies to statutory claims. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("We therefore hold that government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established *statutory* or constitutional rights of which a reasonable person would have known.") (emphasis added); *Davila*, 777 F.3d at 1210 ("Even if RFRA did authorize individual-capacity suits for money damages, these Defendants would be entitled to qualified immunity.").

provide a waiver of sovereign immunity for Plaintiff's constitutional tort claim, and Plaintiff's FTCA claim should be dismissed for lack of jurisdiction.

### III. Recommendation

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss (Doc. No. 38) be **GRANTED**;

2. This action be **DISMISSED WITH PREJUDICE**;

3. Judgment be entered accordingly.

Date: June 10, 2019.

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).